UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSEPH P. KELLY, MANDA L. KELLY, and CARA L. MERRILL,<br><br>Plaintiffs,<br>v.<br><br>ALLAGASH TIMBERLANDS, LP,<br><br>Defendant.<br><br>and<br><br>REGINA KELLY, LANCE KELLY, and TAYLOR JO KELLY,<br><br>Parties-in-Interest. | ) | DOCKET NO. 1:26-CV-00161-SDN |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

NOW COMES, Plaintiffs Joseph P. Kelly, Manda L. Kelly and Cara Merrill ("Plaintiffs"), by and through its undersigned counsel, and with the consent of Defendant, Allagash Timberlands, LP, hereby submits this Second Amended Complaint against Defendant Allagash Timberlands, LP ("Defendant" or "Allagash") and Parties-In-Interest, Regina Kelly, Lance Kelly, and Taylor Jo Kelly (collectively referred to as "Niles Successor Parties") as follows:

**<u>JURISDICTION AND VENUE</u>**

1. This Court has subject matter jurisdiction over this action pursuant to 14 M.R.S. §§ 5951-5963.

2. Venue is proper in this Court pursuant to 14 M.R.S. §501, as the real property at issue is located in Aroostook County, Maine.

**PARTIES**

3. Joseph P. Kelly and Manda L. Kelly are a married couple residing in Allagash, Aroostook County, Maine. Joseph P. Kelly and his predecessors have possessed the disputed property since at least 1936.

4. Cara L. Merrill is the sister of Joseph P. Kelly, and her predecessors have possessed the disputed property since at least 1936.

5. Allagash Timberlands LP is a Maine limited partnership with registered agent in Augusta, Kennebec County, Maine. Allagash owns record title to the disputed property (or portions thereof) and is subject to suit in Maine.

6. Regina Kelly is the widow of Niles Kelly and resides in Allagash, Aroostook County, Maine. Based upon the title materials presently available, Regina Kelly claims or may claim an interest derived from Niles Kelly in property adjoining or included within portions of the land implicated by the declaratory relief sought in this action.

7. Lance Kelly is the son of Niles Kelly and resides in Allagash, Aroostook County, Maine. Based upon the title materials presently available, Lance Kelly claims or may claim an interest derived from Niles Kelly in property adjoining or included within portions of the land implicated by the declaratory relief sought in this action.

8. Taylor Jo Kelly is the granddaughter of Niles Kelly and the daughter of Ryan Kelly, Niles deceased son, and resides in Allagash, Aroostook County, Maine. Based upon the title materials presently available, Taylor Jo Kelly claims or may claim an interest derived from Niles

Kelly in property adjoining or included within portions of the land implicated by the declaratory relief sought in this action.

## FACTUAL ALLEGATIONS

9. The disputed property consists of approximately 80 acres in Allagash, Aroostook County, Maine, lying generally northerly/westerly of Plaintiff's record title lots (Tax Map 8 Lots 871, east portion of 910-B, 910-D, and 910-E) and bounded on the west/north by land of record title of Defendant, Allagash.

10. The Parcel Location Map prepared in 2023 by Brien Boucher, Forester with North Bridge Services ("2023 Boucher Map"), a copy of which is attached hereto as Exhibit A and incorporated by reference. The 2023 Boucher Map accurately depicts the land claimed by Plaintiffs through long-standing adverse possession. It shows the claimed boundary lines that were marked and blazed on the ground, consistent with the area actually and continuously possessed by Plaintiffs and their predecessors.

11. A 1997 and 2002 Boundary Survey Plat as well as a sketch were prepared by Matthew M. MacDonald for Joseph H. Kelly. However, those documents did not accurately depict the full extent of the land in dispute as actually possessed by the Kelly family, which is why the survey was not recorded. The 2023 Boucher Map provides the accurate on-the-ground depiction of the disputed property being claimed in this action.

12. Joseph H. Kelly (Plaintiff's predecessor and grandfather, "Joseph Kelly Sr.") and his predecessors entered and began open, notorious, continuous, hostile, actual, and exclusive possession of the disputed property under claim of right no later than 1936. This is evidenced by family historical use dating to that year, including notations on historical sketches and surveys referencing the long-standing claim.

13. In 1977, Defendant's predecessor, Irving Pulp & Paper Ltd. ("Irving") executed a Release Deed recorded in the Northern Aroostook Registry of Deeds in Book 462, Page 35 acknowledging the Kelly family's adverse possession of certain adjoining lands and releasing or quitclaiming interest therein to Joseph H. Kelly.

14. Joseph H. Kelly openly, notoriously, and adversely held the disputed property (and adjoining parcels) for over 50 years. This is expressly recited in deeds in his chain, including a 1978 deed (Book 462, Page 128) in which Joseph Kelly stated the premises were "acquired by me, Joe Kelly, by open, continuous, adverse possession during the past 45 years," and a 1979 deed (Book 463, Page 280) referencing the 1977 Irving Release Deed (Book 462, Page 35) and stating the land was "acquired by me, Joe Kelly, by adverse possession."

15. The Kelly family's success in establishing adverse possession against Irving is further illustrated by the 1989 judgment in Aroostook Superior Court (Docket CV-89-12), in which a jury found that relatives Guy Kelly, Jr. and Tylor Kelly (and their predecessors) had acquired title by adverse possession to adjoining parcels against Irving's record title. This judgment, along with the deeds cited above, demonstrates the family's long-standing, successful adverse claims against Irving in this area.

16. Through a continuous chain of warranty deeds (all expressly referencing the family's adverse possession and the 1977 Irving release), title and/or possessory rights to adjoining parcels were conveyed to Plaintiff Joseph P. Kelly, including but not limited to:

1. Deed from Leighton P. Kelly to Joseph P. Kelly and Cara L. Merrill dated January 19, 2016, recorded in the Northern Aroostook Registry of Deeds in Book 1921, Page 275 (with annotations of adverse possession and the triangular parcel occupied since 1936);

2. Deed from Timothy W. Wilson and Patricia J. Wilson to Joseph P. Kelly and Manda L. Kelly dated December 7, 2017, recorded in Book 2002, Page 148. Reference is further made to a Deed from Joseph H. Kelly to Leighton P. Kelly dated May 15, 1987 and recorded in Book 709, Page 13.

3. Deed from Clinton M. Anderson and Chandler S. Anderson to Joseph P. Kelly dated May 28, 2022, recorded in Book 2227, Page 247 (conveying an undivided one-half interest from the Estate of Gerald J. Kelly and expressly referencing the 1977 Irving release and adverse possession since Joseph H. Kelly);

4. Personal Representative's Deed from the Estate of Gerald J. Kelly (Julie Kelly, PR) dated December 18, 2022, recorded in Book 2259, Page 122 (conveying an undivided one-half interest and detailing Parcels 1–6 acquired via adverse possession).

17. Plaintiff and his predecessors have tacked their adverse possession.

18. Plaintiff and predecessors have continuously used and possessed the disputed property openly, notoriously, exclusively, actually, and hostilely against Defendant's record title for far more than the 20-year statutory/common-law period (14 M.R.S. § 801; common-law elements). Specific acts of possession since at least the 1990s (and continuous with prior family use) include:

1. Posting "No Trespassing" signs and applying purple paint on boundary trees (Maine statutory notice under 14 M.R.S. § 604-A);
2. Blocking access roads annually (including snow plowing to create barriers/walls);
3. Blocking access every year during deer season;
4. Constructing a pond on the property;
5. Cutting wood/timber;
6. Hunting on the land;
7. General farming, working, and maintenance of the land throughout Plaintiff's lifetime and predecessors'.

19. A 1997 boundary survey/sketch by Matthew M. MacDonald cruised lines in the woods, analyzed records, and met with the Kelly family.

20. Defendant's predecessor, Irving, held record title to the disputed property (or claims to it) but did not exercised dominion or interrupted Plaintiff's continuous adverse possession since 1936. Allagash has also not exercised dominion or interrupted Plaintiff's possession since acquiring the disputed property from Irving in 1999 by virtue of a Deed recorded in Book 1150, Page 191 recorded in the Aroostook County Registry of Deeds.

21. Joseph Kelly Sr. was aware of and accepted certain deeds from Irving, but family possession of the disputed property continued uninterrupted and adversely.

22. Niles Kelly was one of the sons and successors of Joseph H. Kelly and historically owned parcels within the series of Kelly-family parcels adjoining the Disputed Property.

23. Niles Kelly and other Kelly family members, including Leighton Kelly and Gerald Kelly, participated in timber harvesting, road and trail use, maintenance, and other possession and use of portions of the lands now in dispute.

24. There is an actual, justiciable controversy: Defendant claims record title/superior right to possession of the disputed ~80 acres, while Plaintiff has acquired fee simple title by adverse possession, acquiescence, or practical location.

25. In addition to the above acts of possession, the disputed boundary has been marked by visible, long-standing monuments and lines since at least 1936, including the old red blazed possession line, blazed trees, and other markers shown on the 2023 Boucher Map (Exhibit A). These markers have been recognized, maintained, and reinforced by Plaintiffs and predecessors.

26. Defendant and its predecessors have had actual or constructive notice of these visible boundary markers and Plaintiff's (and predecessors') possession up to them since at least 1936, as evidenced by the lack of interruption, the 1977 Release Deed acknowledging adjoining adverse claims, the 1989 judgment on similar family claims, and Irving's 1997 contact with the surveyor.

27. Defendant and its predecessors have acquiesced in and recognized the disputed boundary as marked by these visible lines for well over 20 years (far exceeding the period required under Maine law), without dispute. This acquiescence is inferred from Defendant's conduct, including failure to challenge the markers or possession despite notice, and prior releases/acknowledgments of Kelly family claims.

28. The policy of establishing permanent boundaries consented to over long periods is served by recognizing this boundary, as it has been practically located and used by the parties and predecessors for generations.

**COUNT I**
**DECLARATORY JUDGMENT**
**(Adverse Possession)**

29. Plaintiff realleges and incorporates all preceding paragraphs herein by reference.

30. Plaintiff and his predecessors in interest have acquired fee simple title to the disputed property by adverse possession under Maine law (continuous, hostile, actual, open/notorious, exclusive possession under claim of right for greater than 20 years, with tacking).

31. A declaratory judgment is necessary and proper to resolve the controversy, remove cloud on title, and confirm Plaintiff's ownership.

**COUNT II**
**DECLARATORY JUDGMENT**
**(Boundary by Acquiescence)**

24. Plaintiff realleges and incorporates all preceding paragraphs by reference.

25. Plaintiff and his predecessors in interest have established the disputed boundary by acquiescence.

26. The elements are met by: (1) Plaintiff and his predecessors possession up to a visible line marked by monuments (e.g., red blazed line, blazed trees, purple paint); (2) actual or constructive notice to Defendant; (3) conduct by Defendant from which recognition and acquiescence (not induced by fraud or mistake) may be inferred; and (4) acquiescence for a long period of years (since at least 1936).

27. A declaratory judgment is necessary and proper to resolve the controversy, establish the boundary, remove cloud on title, and confirm Plaintiff's ownership of the disputed property.

**COUNT III**
**DECLATATORY JUDGMENT**
**(Boundary by Practical Location)**

27. Plaintiff realleges and incorporates all preceding paragraphs by reference.

28. Plaintiff and his predecessors in interest have established the disputed boundary by practical location.

29. The boundary has been practically located and recognized by the parties and predecessors through long-standing use, visible markers (e.g., red blazed line since 1936, as shown and confirmed on the 2023 Boucher Map), and mutual conduct for generations, effectively fixing the boundary as depicted on Exhibit A. This practical location resolves any ambiguity in deeds and establishes Plaintiffs' title to the disputed property.

30. A declaratory judgment is necessary and proper to resolve the controversy, establish the boundary, remove cloud on title, and confirm Plaintiff's ownership of the disputed property.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declaring that Plaintiff Joseph P. Kelly is the owner in fee simple absolute of the disputed property by adverse possession, boundary by acquiescence, and/or boundary by practical location, free and clear of any right, title, interest, or claim of Defendant Irving Pulp & Paper, Ltd.;

B. Quieting title in Plaintiff and extinguishing any claim of Defendant;

C. Awarding Plaintiff his costs and reasonable attorney's fees (if allowable); and

D. Granting such other and further relief as the Court deems just and proper.

Date: October 29, 2026

/s/ John E. Baldacci, Jr.
John E. Baldacci, Jr., Esq. Bar No. 5773
Attorney for Plaintiffs
STEVE SMITH TRIAL LAWYERS
191 Water Street
Augusta, ME 04330
207-622-3711
Jack@Americantrialgroup.com